THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* ALAN WEINTRAUB, Appellant.

First Department, October 25, 1973.

*Herbert Kramer* for appellant.

*Alan L. Kovacs* of counsel (*T. James Bryan* with him on the brief; *Frank S. Hogan, District Attorney*), for respondent.

TILZER, J. The defendant appeals from a judgment convicting him, upon his plea of guilty, of criminal possession of stolen property in the second degree (Penal Law, § 165.45), and sentencing him to an indeterminate period of imprison-

ment with a maximum of three years. Prior to the entry of the plea of guilty, the defendant moved to suppress certain evidence, urging that the search conducted at the time of his arrest was illegal. After a hearing, the motion was denied. The sole issue raised on appeal is whether such search was properly made.

At the suppression hearing the following evidence was offered on behalf of the People. While on foot patrol two police officers entered a garage located at 25 West 39th Street. The garage had been the scene of previous acts of vandalism and the patrolmen were checking to see if everything was in order. Upon entering the garage, which had a locked chain across its entrance, the defendant was observed seated in a sports car. The patrolmen, who knew that the car was owned by one Sal Cirella, asked defendant what he was doing in the vehicle. Defendant stated that "He had permission from Frank to sit in the car." Thereupon, in response to the officers' request, defendant, who was holding a black attaché case, alighted from the vehicle. Defendant was then asked to accompany the patrolmen to a nearby store, which was owned by Cirella. When the matter was discussed with Cirella, he stated that he did not know the defendant, and had not given him permission to enter the vehicle. Cirella then accompanied the two officers and the defendant back to the garage, and after examining the vehicle, stated that it had not been tampered with and that nothing was missing. Cirella further stated that the attaché case did not belong to him and that he did not wish to make any complaint against the defendant. Cirella then drove the vehicle out of the garage, and, defendant at that point was arrested for criminal trespass of the garage. The defendant was handcuffed, frisked and additionally, the attaché case, which had been in defendant's possession throughout, was searched. The officers found that the case contained various checks, airline tickets, and credit cards, all made out to different people. As noted, the sole issue raised is whether the full-fledged search of the attaché case was justified as incidental to a lawful arrest.

In support of the contention that the search was invalid, the defendant refers to several recent cases where searches made contemporaneously with lawful arrests were held to be invalid (see *People v. Adams*, 32 N Y 2d 451; *People v. Marsh*, 20 N Y 2d 98; *United States v. Robinson*, 471 F. 2d 1082). It is urged that those cases are inapplicable for in each instance the arrest was for violation of the traffic laws. However, we do not

believe that the cases should be so narrowly construed. Rather, it appears that the principles stated therein may be applied generally wherever a full-fledged search is made at the time of a lawful arrest. Accordingly, the Court of Appeals has stated: " The touchstone of the Fourth Amendment guarantee against illegal searches is reasonableness (*Terry* v. *Ohio,* 392 U. S. 1, 19–20; *United States* v. *Rabinowitz,* 339 U. S. 56, 63; *United States* v. *Robinson,* 471 F. 2d 1082, 1091, 1097) and, in assessing the test of reasonableness, our courts, as well as those of our sister States ' '' have refused to establish a uniform rule to govern all searches accompanying valid arrests, but rather have examined the nature of the offense and the surrounding circumstances to determine whether the search was warranted " (*People* v. *Watkins,* 19 Ill. 2d [11], *supra* at p. 18) ' (*People* v. *Marsh,* 20 N Y 2d 98, 103).'' (*People* v. *Adams,* 32 N Y 2d 451, 454 *supra.*)

The issue therefore, is whether " the nature of the offense and the surrounding circumstances " warranted the search of the attaché case. In determining the answer to that question we must look to the objectives generally of a warrantless search. Those objectives have been stated to be the following: " (1) seizure of fruits, instrumentalities and other evidence of the crime for which the arrest is made in order to prevent its destruction or concealment; and (2) removal of any weapons that the arrestee might seek to use to resist arrest or effect his escape.'' (*United States* v. *Robinson,* 471 F. 2d 1082, 1093.)

From this record it is quite apparent that the search of the attaché case was not in furtherance of either of those objectives. The defendant was arrested solely for criminal trespass of the garage, a crime defined as " knowingly enter[ing] or remain[ing] unlawfully in or upon premises.'' (Penal Law, § 140.05). Therefore, the defendant's unlawful presence on the premises in and of itself, constituted the crime for which he was arrested. Such crime does not involve any fruits or instrumentalities, and in that respect is analogous to a traffic violation. Nor, may the search be justified upon the speculation that the police officers having " determined that [defendant] committed criminal trespass they thus could reasonably suspect that he had in his possession burglary tools or contraband taken from the car in which he was originally seen or from any other car in the garage.'' However, before the search was made the owner of the vehicle had already stated that nothing was missing, and the police were not apprised of any facts indicating that defendant had entered any other

vehicle in the garage. It is also to be noted that the garage was on the street level, and afforded easy access to any passerby. Accordingly, a search for burglary tools, which could be used to effect entry onto enclosed premises, was not justified. Hence, neither the nature of the crime for which defendant was arrested, nor the surrounding circumstances, provided a reasonable basis for probable cause to believe that the defendant was in possession of " fruits or instrumentalities ".

It is equally clear that the search did not have as its objective the purpose of recovery of any weapons the defendant might have in his possession which could be used to effect escape. The facts indicate the opposite. The defendant was first seen while he was merely seated in an automobile and when confronted by the police he proceeded to follow their every instruction. During the entire time, he was in possession of the attaché case, and during that time the police searched neither his person nor the case. And, when the attaché case was searched, the defendant was already handcuffed. It strains the imagination to believe that under these circumstances the search was made to uncover weapons. The entire sequence of events establishes a lack of any reasonable basis to believe that the defendant was armed or dangerous. (See *Terry* v. *Ohio*, 392 U. S. 1, 27.)

We therefore conclude that the search was illegal and the motion to suppress should have been granted. We note, in reaching our conclusion, that the defendant disputed the People's testimony concerning the surrounding circumstances of the arrest and search. However, since we conclude that even accepting the People's version of the facts, the search was illegal, we need not consider the effect of the defendant's testimony.

Accordingly, the judgment rendered December 13, 1971 convicting defendant upon his plea of guilty to criminal possession of stolen property in the second degree should be reversed on the law and the indictment dismissed.

Stevens, P. J., Murphy, Lane and Steuer, JJ., concur.

Judgment, Supreme Court, New York County, rendered on December 13, 1971, unanimously reversed, on the law, and the indictment dismissed.